## WHITELEY, Appellant, v. McLAUGHLIN.

### Division One, June 20, 1904.

**NEGLIGENCE: Landlord and Tenant: Concealed Defect: Knowledge.** The petition charged plaintiff's injuries to a defect in the construction of a railing around a porch, against which she gently leaned and fell. The petition charged that the defect in the fastenings of the railing was concealed by putty and paint so that "there was no means of ascertaining said insecurity." *Held,* that, there being a total failure of evidence that the landlord knew of the defect, plaintiff can not recover in a suit for damages against him.

Appeal from St. Louis City Circuit Court.—*Hon. William Zachritz,* Judge.

AFFIRMED.

*Paxson & Clark* for appellant.

Plaintiff was seriously and permanently injured by the gross negligence of some one. Whose negligence was it, and is he legally liable for the injuries? The textbooks give these rules, as deduced from the decisions, as to the landlord's liability to third persons where the defect amounts to a nuisance: "Where premises are out of repair at the time of the letting, in particulars which the landlord is bound, as regards third persons, not to allow, the landlord is liable for any injuries sustained by a third person from such want of repair. The reason for this rule seems to be that in such a case the dangerous condition of the premises constitutes a

nuisance, and the liability of the landlord results from his leasing premises upon which a nuisance exists.'' 18 Am. and Eng. Ency. of Law (2 Ed.), pp. 239, 244; Gordon v. Peltzer, 56 Mo. App. 603; Tate v. Railroad, 64 Mo. 155; Thum v. Rhodes, 12 Colo. App. 245; Willcox v. Hines, 100 Tenn. 538; Hines v. Willcox, 96 Tenn. 148, 54 Am. St. Rep. 823; Griffith v. Lewis, 17 Mo. App. 612; Imp. Co. v. Sipp, 14 Ky. Law Rep. 924; Carson v. Godley, 26 Pa. St. 116 (67 Am. Dec. 406); Wunder v. McLean, 134 Pa. St. 334, 19 Am. St. Rep. 702; Martin v. Richards, 155 Mass. 386.

*Rassieur & Rassieur* for respondent.

In the absence of an express warranty against defects, or agreement to repair, or fraud or active concealment on the part of the landlord, the tenant can not recover against him for injuries caused by the defective condition of the demised premises. The same rule applies when the injuries are sustained by a member of the tenant's family. Negligence on the part of the landlord to discover the defect is not sufficient to make a case. 18 Am. and Eng. Ency. Law, p. 215; Taylor on Landlord and Tenant, sec. 175a; Eyre v. Jordan, 111 Mo. 424; Peterson v. Smart, 70 Mo. 34; Rogan v. Dockery, 23 Mo. App. 313; Roberts v. Cotty, 100 Mo. App. 500; Jaffe v. Harteau, 56 N. Y. 398; Towne v. Thompson, 68 N. H. 317, 46 L. R. A. 748; Gallagher v. Button, 73 Conn. 172; Smith v. State (Md.), 51 L. R. A. 772.

VALLIANT, J.—Plaintiff lived with her husband in a house which he rented as a residence for his family from defendant. At the rear of the house was a porch, the floor of which was six or eight feet above the level of the ground; it was enclosed by a banister or railing attached to perpendicular posts. Plaintiff having occasion to be on the porch, leaned gently against the rail-

ing, when it broke, and she fell to the ground and received severe injuries. This suit is to recover damages for those injuries.

The petition alleges that it was a comparatively new frame house and to all outward appearances safely and securely built, but that in point of fact the railing which broke was not securely fastened, it was attached at one end to the post with six small nails measuring from a half inch to an inch in length, the heads of which were covered with putty and paint so as to entirely conceal them from view and the other end was not fastened at all; that plaintiff and her husband did not know the insecure condition of the railing "and there was no means of ascertaining said insecurity without destroying said railing;" that the defect was in the original construction of the porch "which was constructed by the defendant himself and under his own immediate supervision," and the defect was known to the defendant at the time he rented the house to her husband, but he concealed the fact from them; that at the time she received the injury she was acting carefully and "was relying upon the apparent security and safety of said porch and railing."

The answer was a general denial.

The plaintiff's testimony tended to prove the allegations of her petition except the allegations that the house was built by the defendant himself and under his immediate supervision, and that at the time he rented the house he knew the defective condition of the fastening of the railing and concealed it. On these points the evidence showed that this was one of five small houses in a row built by one of plaintiff's witnesses and his brother for the defendant; the witness and his brother were carpenters and builders, the defendant was a groceryman and saloon keeper; the witness superintended the building himself and the defendant was there all the time; but when the houses were built these back porches were not constructed; they

were not called for in the plans and specifications, and were not added until two or three years after the houses had been built; witness did not build the porches and did not know who built them; there was no evidence to show who built them. One of plaintiff's witnesses who lived in another one of these houses testified that after the accident the defendant was "fixing around our porch and he made the remark that 'the damn bum carpenters, you couldn't depend on them unless you were right over them.' . . . There was something that wasn't properly done about the house or porch and he was kind of out of humor about having to fix so much around them. Q. During the conversation was there any reference made by either you or Mr. McLaughlin in reference to the Whiteley case? A. Yes, sir."

That is the evidence which the plaintiff thinks tends to prove that the defendant built the porches himself or that they were built under his eye and that he knew that this defect existed in the fastening of the railing which caused the plaintiff's mishap.

At the close of the plaintiff's case the court instructed the jury that she was not entitled to recover, a judgment of nonsuit with leave followed, and the plaintiff appeals.

The plaintiff's case is not founded on a contract, but it is bottomed on alleged negligence; it is an action in tort. In their brief the plaintiff's counsel say: "The plaintiff was seriously and permanently injured by the gross negligence of some one. Whose negligence was it, and is he liable for the injuries?"

According to the plaintiff's own theory the defendant is not liable unless he was negligent and he was not negligent unless he knew of the alleged defect and omitted to inform his tenant of it, or unless he failed to exercise the degree of care that the law imposed on him to search for the defect, if the law imposed any such care on him. The allegation in the petition is that the defendant knew it and concealed it, but there is no evi-

dence that he knew it.   There was evidence that he was present while the houses were being built, but the porches were not added until two or three years after the houses had been finished and there is no evidence that he was present when they were being added.   His vague reference to "bum carpenters" has no significance.   The petition states that the defect was concealed by putty and paint "and there was no means of ascertaining   said insecurity without destroying said railing."   If the defendant did not know it, he could not have discovered it, according to the petition, without tearing the railing to pieces, and since that would be unreasonable, the plaintiff must take the position that the defendant is liable for the consequence of a hidden defect existing at the time the house was rented, of which he had no knowledge and which with reasonable care he could not have discovered.

The plaintiff relies mainly on an opinion of the Supreme Court of Tennessee in Willcox v. Hines, 100 Tenn. 524.

The doctrine of the Tennessee court laid down in that opinion is, first, that whilst in the absence of an express guarantee of the safe condition of the premises or agreement to repair, the law raises no such contractual obligation on the landlord by implication, yet if at the time of the letting the landlord knows that a defect exists which renders the premises unsafe for use, it is his duty to notify the tenant of the same and failing in that duty he is liable for the consequences unless the defect is so apparent that the tenant is guilty of contributory negligence in using it; second, if the defect is hidden it is the landlord's duty to use reasonable care to discover it, and failing, is liable for an injury resulting from the defect.   On the first proposition there is little, if any, denial of its soundness, but on the second proposition all the authorities do not agree.   That case was twice before that court and the opinion in the first appeal was reported with an extensive note in 34 L. R.

A. 824, in which the annotator, after referring to many cases, says:

"As a branch of the liability of the landlord for fraud or deceit the question has arisen as to how far it is his duty to disclose defects or to warn of dangers. The rule on this subject seems to be no stronger than this: If he knows of a defect which is likely to produce injury the nature of which is such that careful examination by the tenant would not disclose it, he must notify the tenant of it. It is not his duty to search for defects, and if the defect is easily discoverable he need not mention it."

On the second appeal, which is the decision on which appellant relies, 100 Tenn. 524, the Tennessee court, per WILKES, J., returns to the subject and by very forcible argument and array of authorities maintains its position.

The facts of the case at bar do not call for a decision on the disputed proposition, because if we should take the same view of the law regarding the duty of the landlord to take reasonable care to learn the condition of his premises before he rented them, it would not help the plaintiff's case. The plaintiff says in her petition that this was a hidden defect, "and there was no means of ascertaining said insecurity without destroying said railing." It was, therefore, a defect of which the evidence fails to show the defendant had any knowledge, and which according to the plaintiff's own showing could not have been discovered by the exercise of reasonable care.

The judgment is affirmed.

All concur.