S. E. EDMONSTON, RESPONDENT, v. KANSAS CITY, MISSOURI, APPELLANT.—57 S. W. (2d) 690.

Kansas City Court of Appeals. March 6, 1933.

818

W. W. McCanless for respondent.

George Kingsley and John J. Cosgrove for appellant.

BLAND, J.—This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $1200 and defendant has appealed.

The facts show that plaintiff was injured on the 10th day of January, 1929, by stepping into a manhole in the nighttime, as he was going to his work at the Journal-Post Company building, in Kansas City. The manhole was located in a park or park property owned by the defendant.

Plaintiff alighted from a street car on Holmes street and proceeded west about a half a block along 22nd street, an east and west street in said city, to McCoy avenue, which intersects 22nd street. At this point 22nd street comes to a dead end on account of the park property being situated on ahead toward the west. This property extends from McCoy avenue to Gillham Road, a distance of a block or more. The Journal-Post Building is a short distance west of Gillham Road.

About five and one-half years before plaintiff was injured someone constructed a sidewalk of asphalt and cinders across the park. This sidewalk was six or seven feet in width and was a good smooth walk. About two and one-half years before the trial the city built a hospital in the vicinity and trucks bearing the material for that work were driven across the park and the sidewalk, breaking the latter up, and leaving it in such a condition that it was not used thereafter by pedestrians. However, they continued to cross the park, making paths in the vicinity of the old sidewalk. After pedestrians discontinued the use of the sidewalk it grew up in weeds and grass. At the time of the trial, nearly two and one-half years after the casualty, there was evidence of the existence of the sidewalk. It was visible for stretches, plainly indicating that it ran clear across the park.

Plaintiff testified that he had never crossed the park before; that there was snow and ice on the ground and that he followed a path

walking toward his destination, the Journal-Post building where he worked. After he had gone some distance into the park and along the path he stepped through a hole in the covering of a manhole, resulting in his injury. This hole in the cover had been in existence for several years prior to plaintiff's stepping into it.

The evidence does not show where the path that plaintiff took in crossing the park ran in reference to the sidewalk, except that it was in the vicinity. Plaintiff testified that he walked along a ridge about half of the distance to where he was injured, "kind of a ridge throwed up like it is through water for a dam. . . . It just looks like it was made to turn the water to the sewers." The ridge veered off toward the south and he apparently left it for this reason. The evidence was that the manhole was four or five feet from the sidewalk.

One witness testified that during the trial she picked up some of the material that formerly constituted a part of the sidewalk; that some of it was found along where the sidewalk ran and some of it "right beside" the manhole; but as before stated, there is no evidence that the sidewalk came any nearer than four or five feet of the manhole.

It would appear that the sidewalk was broken up only a short time before plaintiff was injured, as he was injured approximately two and one-half years before the trial of the case and the hospital was erected about two and one-half or three years prior to the last mentioned time. After the sidewalk was broken up the city put up no barricades or did it take any other measure to withdraw it from traffic.

The petition charges that the city maintained a public street or thoroughfare known as 22nd street over the park in question and, that along the south edge of this thoroughfare or street defendant maintained the sewer hole in question, with a segment broken out of its top, into which plaintiff stepped, to his injury; that when injured plaintiff was walking along said street. Negligence is alleged in the city's permitting the sewer cover to remain in its dangerous condition.

Defendant contends that its demurrer to the evidence should have been sustained for the reason, among other things, that the evidence fails to show that the place where the plaintiff claims to have been injured was a public street, as alleged in his petition. Defendant insists that there is no evidence that the city constructed or maintained the sidewalk, itself, which was broken up by the trucks. While, there is no evidence that the city constructed this sidewalk, there is testimony tending to show that it was used by pedestrians crossing the park for a period of five and one-half years prior to plaintiff's injury. It seems that the park, itself, had never been improved or adorned for park purposes. There were no lights in it, no driveways had been constructed and no other sidewalk, save the one in question, which was evidently placed there for the purpose of permitting persons to

cross the park in going to and from their work. But there is evidence that this sidewalk was used extensively by people for this purpose. The sidewalk, having been used uninterruptedly for five and one-half years by the public, generally, defendant cannot escape the obligation to have kept it in repair. After such showing of user the city will be deemed to have acquiesced in the public use of the walk. In other words, it adopted the sidewalk as its own. [Benton v. City of St. Louis, 217 Mo. 687; Curran v. City of St. Jos., 143 Mo. App. 618; Gray v. City of Hannibal, 29 S. W. (2d) 710, 712.]

In maintaining walks through parks the city exercises a proprietary function and not a governmental one. [Kuanzel v. City of St. Louis, 278 Mo. 277; Healey v. K. C., 277 Mo. 619.] In the case of Ackeret v. City of Minneapolis, Lawyers Reports Annotated, 1915D, pages 1111, 1114, the Supreme Court of Minnesota stated:

"Upon examining the grounds upon which liability is imposed for defects in streets, we find that the same grounds exist for imposing liability for defects in the walks and pathways in question. These walks and pathways were used not merely for purposes of pleasure and recreation, but as thoroughfares for passing from one part of the city to another. They differed from other walks provided by the city for the use of pedestrians only in the fact that they were within the limits of a park. We find no substantial distinction between such walks and those located along the public streets."

We think there is no question but that there was sufficient evidence tending to show that the city was responsible for the maintenance of the sidewalk in question and that it was negligent in failing to maintain and keep same in repair.

However, we think that the evidence fails to show that the city maintained, as a walk, the pathway which plaintiff was using, and which ran over the sewer in question, and that defendant's contention that the negligence pleaded in the petition was not proven, is well taken.

The petition is founded upon the theory that the path, itself, was a highway which defendant was required to maintain. There were a number of pathways made by pedestrians on account of their having to detour, but there was no evidence that the city directly or constructively recognized any of these paths as public walks or in any other manner.

We think the true liability of the city is based upon its failure to maintain the sidewalk in a reasonably safe condition so that it could be used by pedestrians. Undoubtedly it was this negligence that constituted the proximate cause of plaintiff's injury, for it was the defective condition of the sidewalk that forced him, in common with others, to use a by-way, resulting in his injury. [See Green v. Town of Danby, 12 Vt. 338; City of Superior v. Olt, 239 Fed. 100.]

Plaintiff relies upon such cases as Campbell v. City of Chillicothe,

239 Mo. 455; Shippey v. K. C., 254 Mo. 1, and Miller v. Mo. Wreck-ing Co., 187 S. W. 45.] In all of these cases the plaintiff was using the sidewalk but was injured on account of a defect, not in the side-walk, but by reason of a dangerous situation so close to the sidewalk as to make the use of the latter dangerous. In these class of cases the courts hold that the municipality is negligent in allowing pitfalls and other dangers to exist so near to the sidewalk as to make its use not reasonably safe. Of course, that is not the case here. In the case at bar plaintiff was not using the sidewalk but a path that did not, at the place where he was injured, come nearer than four feet of the sidewalk.

Complaint is made of the giving of plaintiff's instruction No. 1. We think that this contention must be upheld. Plaintiff offered no instruction on the merits of the case. His instruction No. 1 is on the measure of damages. This instruction, however, referred to defend-ant's negligence in general terms and had the jury find such negli-gence, although, the petition pleads specific acts of negligence. We find nothing in defendant's instructions to cure this error. These were merely upon defendant's responsibility for the existence of the sidewalk and upon contributory negligence. Unlike the instruction in the case of Hilderbrand v. St. L. & S. F. Ry. Co., 298 S. W. 1069, none of defendant's instructions, in the case at bar, admit that plain-tiff was entitled to recover if the injury resulted in the manner in which he claimed in his petition and in his testimony.

Plaintiff's instruction No. 1 was also erroneous in submitting the question of impairment of plaintiff's earning power, as there was no evidence of such. [Grattan v. Suedmeyer, 144 Mo. App. 719; Devlin v. St. Louis, 252 Mo. 203.] Plaintiff was employed by the Journal-Post as a janitor. Sometime after he returned to his job he was as-signed to molding metal, as this work did not involve as much use of his injured parts as the work of janitor. He received injuries to his back and knee which prevented him from working for the greater part of two and one-half months. However, he returned to work and so far as the record shows, has not lost a day from his work since that time, which covers a period of more than two years. He receives the same salary except that he, together with the other employees of the company, have suffered a reduction in salary, but plaintiff was not reduced on account of his inability to perform his duties. In other words, he would have received the same reduction had he not received his injuries. It would seem, under the circumstances, that plaintiff's injuries were not of great seriousness and the jury would be in-dulging in mere speculation in finding that he suffered any loss of earning power. The verdict is substantial for the injuries received.

At another trial the question of notice to the city of the accident will no doubt be obviated by introducing in evidence the petition which was filed in time and contains the necessary elements of notice.

The judgment is reversed and the cause remanded. All concur.